IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **RAUL MARIN ARELLANES,** | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | No.  EP-15-CV-303-ATB |
| | § | |
| | § | |
| **CAROLYN W. COLVIN,** | § | |
| **Acting Commissioner of the** | § | |
| **Social Security Administration,** | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision.  Jurisdiction is predicated upon 42 U.S.C. § 405(g).  Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c), and Rule CV-72 and Appendix C to the Local Court Rules for the Western District of Texas.

Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act.  For the reasons set forth below, this Court orders that the Commissioner's decision be **AFFIRMED**.

### I. PROCEDURAL HISTORY

On August 1, 2012, Plaintiff filed applications for DIB and SSI, alleging a disability onset date of July 1, 2012.  (R. 120, 127).  His applications were denied initially and denied upon reconsideration.  (R. 49, 63).  Plaintiff filed a request for a hearing, which was held on June 11,

2014. (R. 27-39, 67). The Administrative Law Judge ("ALJ") issued a decision on August 5, 2014, denying benefits. (R. 13-21). Subsequently, the Appeals Council denied review. (R. 1-3).

## II.   ISSUE

Plaintiff presents the following issue for review:

> 1. Whether the ALJ's residual functional capacity ("RFC") finding is supported by substantial evidence. (Pl.'s Br. 2, ECF No. 21).

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to accommodate all of Plaintiff's limitations from his medical impairments. (*Id*. at 3-4). Specifically, Plaintiff argues that the ALJ failed to fully address Plaintiff's ability to lift, carry, reach, and manipulate. (*Id*. at 4-5). Accordingly, Plaintiff claims that because the ALJ's RFC determination failed to contain all of Plaintiff's limitations, the remaining steps of the sequential evaluation process were tainted. (*Id*. at 6). Consequently, Plaintiff seeks a reversal and remand for an award of benefits or for further administrative proceedings. (*Id.*)

## III.   DISCUSSION

### A.   Standard of Review

This Court's review is limited to a determination of whether the Commissioner's decision is supported by substantial evidence, and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (citations omitted); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam) (citation omitted). "Substantial evidence 'is more than a mere scintilla, and less than a preponderance.'" *Masterson*, 309 F.3d at 272 (citation omitted). The Commissioner's findings will be upheld if supported by substantial evidence. *Id.* (citation omitted). A finding of "no substantial evidence" will be made "only where there is a conspicuous absence of credible

choices or no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (per curiam) (internal quotation marks and citation omitted).

In applying the substantial evidence standard, the court may not reweigh the evidence, try the issues *de novo,* or substitute its own judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272 (citation omitted). Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Id.* (citation omitted); *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citation omitted).

**B.   Evaluation Process**

The ALJ evaluates disability claims according to a sequential five-step process: 1) whether the claimant is currently engaged in substantial gainful activity; 2) whether the claimant has a severe medically determinable physical or mental impairment; 3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; 4) whether the impairment prevents the claimant from performing past relevant work; and 5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520. The claimant bears the burden of proof at the first four steps of the analysis. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Once the claimant meets that burden, it shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989) (per curiam).

In the present case, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine and depression. (R. 15). The ALJ also found that Plaintiff had the following non-severe impairments: diabetes mellitus, right shoulder pain, and limited hearing. (R. 16). The ALJ determined that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the listed impairments. (R. 16). In doing so, the ALJ determined that Plaintiff's impairments did not meet the criteria of listing 1.04, Disorders of the Spine, and listing 12.04, Affective Disorders. (R. 16-17; *see* 20 C.F.R. Part 404, Subpart P, Appendix 1). After considering the entire record, the ALJ determined that Plaintiff retained the RFC to perform light work,[1] limited insofar as

> [Plaintiff] cannot perform constant reaching overhead with the right upper extremity. [Plaintiff] can have occasional interaction with the public. [Plaintiff] can understand, remember[,] and execute simple instructions and tasks; he can maintain concentration, pace, and persistence for two hours at a time, and he has the ability to work for additional periods of two hours at a time, before and after regularly scheduled breaks in the morning, lunch, and in the afternoon.

(R. 17-18). The ALJ then determined that Plaintiff was able to perform his past relevant work as a factory laborer. (R. 20-21). Consequently, the ALJ found that Plaintiff was not disabled through the date of the decision. (R. 21).

**C.    The ALJ's Determination of Plaintiff's RFC**

Plaintiff contends that substantial evidence does not support the ALJ's RFC determination because the ALJ failed to take into account Plaintiff's physical limitations which limit his ability to lift, carry, reach, and manipulate. (Pl.'s Br. 3-5, ECF No. 21). He argues that his impairments are more limited than stated in the ALJ's RFC determination. (*Id*. at 6).

RFC is the most an individual can still do despite his or her limitations. 20 C.F.R. § 404.1545; SSR 96-8p. The responsibility to determine the plaintiff's RFC belongs to the ALJ.

---

[1] 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."). Additionally, SSR 83-10 states, "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."

*Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making this determination, the ALJ must consider all the record evidence and determine the plaintiff's abilities despite his or her physical and mental limitations. *Martinez*, 64 F.3d at 176. The ALJ must consider the limiting effects of an individual's impairments, even those that are non-severe, and any related symptoms. *See* 20 C.F.R. §§ 404.1529, 404.1545; SSR 96-8p. The relative weight to be given the evidence is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001) (per curiam). The ALJ is not required to incorporate limitations in the RFC that he or she did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam).

It is the plaintiff's burden to establish disability and to provide or identify medical and other evidence of his or her impairments. *See* 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512(c). A medically determinable impairment must be established by acceptable medical sources. 20 C.F.R. § 404.1513(a). The plaintiff's own subjective complaints, without objective medical evidence of record, are insufficient to establish disability. *See* 20 C.F.R. §§ 404.1508, 404.1528, 404.1529.

**D.    Analysis**

As a preliminary matter, the Court stresses that the relevant question for review is whether the ALJ's decision is supported by substantial evidence, not whether the record contains evidence to support more severe limitations. *Navarro v. Colvin*, No. A-12-CV-040-LY-AWA, 2013 WL 1704795, at *3 (W.D. Tex. Apr. 19, 2013) (citing *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997) (per curiam)). Additionally, the ALJ is tasked with weighing all of the evidence presented, *Chambliss*, 269 F.3d at 523, and the ALJ is not required to summarize and discuss every piece of record evidence in his or her decision. *Falco v. Shalala*, 27 F.3d 160, 164

(5th Cir. 1994) (holding that the ALJ does not have to "follow formalistic rules in his articulation" of the record evidence). Moreover, the mere presence of an impairment is not disabling per se, and subjective evidence of pain will not take precedence over conflicting medical evidence. *Hames v. Hackler*, 707 F.2d 162, 165 (5th Cir. 1983); *Cook v. Heckler*, 750 F.2d 391, 395 (5th Cir. 1985). While the ALJ must take into account the plaintiff's subjective allegations of pain in determining the RFC, the plaintiff must produce objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged. *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989).

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and results from legal error. (Pl.'s Br. 2, ECF No. 21). In particular, Plaintiff argues that "the ALJ failed to properly accommodate all of Plaintiff's limitations due to his medical impairments" when making the RFC determination. (*Id.* at 4). Plaintiff also contends that the objective medical evidence indicates that the ALJ's finding failed to accommodate Plaintiff's limitations. (*Id.* at 4-6). As a result of the ALJ's failure to include all of the limitations from Plaintiff's impairments in the RFC determination, Plaintiff argues that the remaining steps in the sequential evaluation process were ultimately tainted. (*Id.* at 6).

The Commissioner responds by arguing that substantial evidence supports the ALJ's RFC determination because the lifting and reaching limitations imposed by the ALJ fully account for Plaintiff's impairments. (Def.'s Br. 3, ECF No. 22). The Commissioner contends that the objective medical evidence demonstrates that the ALJ properly limited Plaintiff's ability to reach. (*Id.* at 4-5). The Commissioner further contends that the ALJ found that Plaintiff's subjective allegations were not credible and that Plaintiff did not challenge the ALJ's credibility determination. (*Id.*) The Commissioner further argues that Plaintiff's subjective complaints and

the objective medical evidence fail to substantiate any hand limitations. (*Id*. at 5). Therefore, the Commissioner requests that the Court affirm the ALJ's decision. (*Id*. at 6).

The mere existence of pain is not an automatic ground for obtaining disability benefits. *Cook*, 750 F.2d at 395. The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423. The statute provides that allegations of pain must be corroborated by objective medical evidence showing the existence of a physical or mental impairment which could reasonably be expected to cause pain. *Chambliss*, 269 F.3d at 522. Plaintiff states that he is only required to show that there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or supported symptoms alleged. (Pl.'s Br. 5, ECF No. 21, citing 42 U.S.C § 423(d)(5)(A)). However,

> 42 U.S.C. § 423(d)(5)(A)[] merely states that a claimant's testimony as to pain or other symptoms cannot be conclusive evidence of disability and that objective medical evidence must be offered and considered when determining whether a claimant is disabled. It does *not* establish that the production of objective medical evidence resolves the question of whether a particular impairment is disabling.

*Navarro*, 2013 WL 1704795, at *4 (internal citation omitted). The ALJ must still consider the entirety of the record when making a determination, and decide what weight to accord the various medical reports. *Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988) (per curiam). This Court, in turn, must determine whether the ALJ's determination is supported by substantial evidence. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (per curiam).

A review of the record evidence indicates that there is substantial evidence to support the ALJ's conclusion that Plaintiff retained the capacity to perform a limited range of light work. Additionally, the Court finds that the ALJ's determination fully accounts for Plaintiff's impairments because the ALJ accommodated Plaintiff's reduced strength, limited range of motion, and degenerative changes by including a reaching limitation in the RFC determination to

"prevent an exacerbation of [Plaintiff's] symptoms." (R. 18-20). Consequently, the ALJ's RFC determination is supported by substantial evidence and does not result from legal error.

The Court finds that the consultative examiner's report provides substantial evidence in support of the ALJ's RFC determination. A consultative physical examination was performed on October 20, 2012, by Dr. John Roaten. (R. 257-62). During that evaluation, Plaintiff presented with an eight-year history of diabetes that caused fatigue, right shoulder pain reported as a 10/10 on the pain scale which affected his ability to lift and reach, and back pain reported as 8/10 on the pain scale which affected his ability to bend and lift. (R. 257). Upon physical examination, Dr. Roaten observed decreased muscle strength of 4/5 in Plaintiff's right deltoid, bicep, and tricep, however, all other areas were normal. (R. 260). Dr. Roaten further observed mild cervical spine tenderness to palpation, tenderness over the acromioclavicular joint of the right shoulder, and decreased range of motion in the right shoulder and thoracolumbar spine. (R. 260-61). Dr. Roaten's impression noted normal and symmetric reflexes for the upper and lower extremities, right shoulder tenderness over the acromioclavicular joint, limited range of motion for the right shoulder, and thoracic spine tenderness. (R. 261). Although Dr. Roaten suspected Plaintiff's "right shoulder pain to be related to possible impingement rotator cuff pathology," the doctor noted that Plaintiff's overall motion and strength were good. (R. 261). Dr. Roaten opined that Plaintiff's shoulder could be improved by a "rehab regimen." (R. 262). Dr. Roaten further observed Plaintiff's spine "to be arthritic in nature" but "potentially amenable to rehab services." (R. 262). Dr. Roaten concluded his findings by noting that Plaintiff did not have any limitations on reaching, handling, feeling, grasping, and fingering, that Plaintiff had mild limitations for lifting and carrying weight due to right shoulder pain and weakness, and that Plaintiff had possible limitations with repetitive bending, stooping, crouching, and squatting. (R. 262). The

ALJ reviewed Dr. Roaten's report and concluded that the limitations imposed in the RFC would "prevent an exacerbation of [Plaintiff's] symptoms." (R. 19). Moreover, the ALJ assigned "some weight" to Dr. Roaten's opinion as Plaintiff had a "normal examination[] with general good strength and a normal gait" but determined that "a reaching restriction based on [Plaintiff's] reduced strength, limited range of motion, and x-rays" should be added. (R. 20). The ALJ further noted that no "additional postural limitations were necessary as [Plaintiff's] range of motion was normal in the treatment notes and he was able to squat at the examination." (R. 20). Therefore, the Court finds that Dr. Roaten's opinion provides substantial evidence in support of the ALJ's RFC determination.

The Court finds that Plaintiff's records from La Fe Clinic provide substantial evidence in support of the ALJ's RFC determination. On October 15, 2010, January 26, 2012, March 6, 2012, June 5, 2012, and November 7, 2013, Plaintiff visited La Fe Clinic with reports of back or shoulder pain.[2] (R. 214, 220-21, 248-53, 370-73). During Plaintiff's October 15, 2010 visit, Plaintiff presented with, among other things, complaints of upper left quadrant pain, however, the record does not specify if Plaintiff's shoulder or back was the cause of the pain. (R. 220-21). During Plaintiff's January 26, 2012 visit, Plaintiff presented with complaints of rib pain and a mass on his spine located at the thoracic level. (R. 214, 253). The doctor ordered an x-ray for the mass on Plaintiff's spine and for Plaintiff to follow up in one month but it does not appear that Plaintiff followed up until March 2012, and no x-ray appears in the record from that time. (R. 214, 252-54). During Plaintiff's March 6, 2012 visit, Plaintiff received x-ray results which

---

[2] The Court notes that Plaintiff visited La Fe Clinic on April 26, 2010, June 10, 2010, October 18, 2010, May 3, 2011, September 17, 2012, and June 4, 2013, however, these visits were for treatment other than back or shoulder pain. (R. 217, 219, 223, 225, 374, 399-400).

indicated an osteophyte[3] at T10-T11. (R. 251-52). During Plaintiff's June 5, 2012 visit, he presented with complaints of right shoulder pain and a decreased range of motion. (R. 248-50). The doctor prescribed medication for Plaintiff's right shoulder pain and ordered x-rays for Plaintiff's right shoulder. (R. 250). During Plaintiff's November 7, 2013 visit, a review of his systems indicated, among other things, right shoulder pain. (R. 370-73). Upon physical examination, Plaintiff's musculoskeletal region was normal, Plaintiff was diagnosed with right shoulder pain, and Plaintiff was scheduled for an MRI on his right shoulder. (R. 371-73). The Court notes that in each of these examinations no limitations were imposed on Plaintiff's back or shoulder. (R. 214, 220-21, 248-53, 370-73). Therefore, the Court finds that Plaintiff's visits to La Fe Clinic provide substantial evidence in support of the ALJ's RFC determination.

The Court finds that diagnostic images of Plaintiff's right shoulder and spine provide further substantial evidence in support of the ALJ's RFC determination. On June 5, 2012, an x-ray of Plaintiff's right shoulder revealed "[no significant bony abnormality] . . . ." (R. 233). On July 6, 2012, an x-ray of Plaintiff's right shoulder revealed "arthrosis of the acromioclavicular joint with narrowing of joint space, subchondral sclerosis[,] and small osteophytes." (R. 306). On October 29, 2012, an x-ray of Plaintiff's right shoulder revealed "no major degenerative process" and "no fracture or dislocation of the right shoulder." (R. 266). On February 4, 2011, an MRI of Plaintiff's spine revealed "[d]egenerative discopathic changes, lumbosacral spondylosis and intervertebral osteochondrosis involving L5-S1 intervertebral segment." (R. 236-37). The MRI also revealed "[m]oderate to severe degenerative narrowing of L5-S1 lateral recesses and neural foramina with displacement of both exiting (L5) and transiting (S1) nerve roots." (R. 236). On May 5, 2011, an x-ray of Plaintiff's spine revealed a "[prominent

---

[3] Osteophyte is defined as "a bony excrescence or osseous outgrowth." *See Dorland's Illustrated Medical Dictionary* 1348 (32d ed. 2012).

osteophyte at T10-T11] . . . ." (R. 234). On October 29, 2012, an x-ray of Plaintiff's spine revealed "[d]egenerative T10-T11 spondylosis." (R. 265). The ALJ reviewed the x-rays and MRI containing possible limitations regarding Plaintiff's back and shoulder in her RFC determination[4] and found that the results limited Plaintiff to "light work with reaching and postural restrictions to prevent an exacerbation of his symptoms." (R. 19). Therefore, the Court finds that the diagnostic images of Plaintiff's right shoulder and spine provide substantial evidence in support of the ALJ's RFC determination.

The Court also finds that Plaintiff's visits to University Medical Center's emergency department provide substantial evidence in support of the ALJ's RFC determination. On September 18, 2011, July 6, 2012, and December 3, 2012, Plaintiff visited University Medical Center's emergency department with complaints of back or shoulder pain.[5] (R. 290-95, 303-06, 320-26). Upon physical examination at the September 18, 2011 visit, although Plaintiff had 5/5 strength to all extremities and a full range of motion in flexion and extension of his back, Plaintiff was diagnosed with back pain. (R. 325). Upon physical examination at the July 6, 2012 visit, Plaintiff was found to have a normal range of motion in his right shoulder. (R. 304). Upon physical examination at the December 3, 2012 visit, Plaintiff was found to have a normal range of motion for his back and musculoskeletal region, however, Plaintiff was diagnosed with

---

[4] The ALJ specifically mentioned the February 4, 2011 MRI of Plaintiff's spine, the October 29, 2012 x-ray of Plaintiff's spine, and the July 6, 2012 x-ray of Plaintiff's shoulder in her decision. (R. 19). The Court notes, however, that the remaining x-rays showed either similar results or no abnormalities as those reviewed by the ALJ.

[5] Plaintiff's chief complaint for an emergency visit dated July 6, 2012, was for rib pain but Plaintiff also presented with complaints of shoulder pain. (R. 303).

lumbosacral spondylolysis.[6] (R. 294-95). The Court notes that in each of these visits Plaintiff was discharged with education on pain management and medications but no limitations were imposed on Plaintiff's back or shoulder. (R. 290-95, 303-06, 320-26). Therefore, the Court finds that Plaintiff's visits to University Medical Center's emergency department provide substantial evidence in support of the ALJ's RFC determination.

The Court further finds that Plaintiff's visits with Dr. Rafael Armendariz provide substantial evidence in support of the ALJ's RFC determination. Plaintiff had five examinations with Dr. Armendariz, however, Plaintiff only complained of shoulder pain during one examination.[7] (R. 434-47). During Plaintiff's first visit with Dr. Armendariz on January 30, 2014, Plaintiff asked for refills of his prescriptions and presented with complaints of type II diabetes mellitus ("DM-2"). (R. 445-47). A physical examination by Dr. Armendariz was normal and Plaintiff was diagnosed with, among other things, right shoulder pain and prescribed Cyclobenzaprine and Naproxen. (R. 447). During Plaintiff's second visit with Dr. Armendariz on January 30, 2014, Plaintiff had an annual physical in which he did not present with any complaints of pain, and the physical examination was normal. (R. 442-43). During the January 31, 2014 visit, Dr. Armendariz referred Plaintiff to a dentist for missing teeth and Plaintiff presented without any other complaints. (R. 441). During the February 10, 2014 visit, Plaintiff discussed lab work results with Dr. Armendariz and presented with complaints of DM-2. (R. 438). A physical examination at the visit was also normal. (R. 439). During the March 4, 2014, Plaintiff presented with complaints of shoulder pain. (R. 434). Dr. Armendariz noted that

---

[6] Spondylolysis is defined as "dissolution of a vertebrae; a condition marked by platyspondylia, aplasia of the vertebral arch, and separation of the pars interarticularis." *See Dorland's Illustrated Medical Dictionary* 1754 (32d ed. 2012).

[7] Plaintiff visited Dr. Armendariz on January 30, 2014, January 31, 2014, February 10, 2014, and March 4, 2014. (R. 434-47). The Court notes that two examinations with Dr. Armendariz occurred on January 30, 2014. (R. 442-46).

Plaintiff's shoulder was stable, and recommended that Plaintiff continue with his medications. (R. 436). The Court notes that, during all of Plaintiff's visits, Dr. Armendariz did not impose any limitations on Plaintiff's back or shoulder. (R. 434-47). Therefore, the Court finds that Plaintiff's examinations with Dr. Armendariz provide substantial evidence in support of the ALJ's RFC determination.

Additionally, the Court rejects Plaintiff's claim regarding a lack of hand limitations. (Pl.'s Br. 4, ECF No. 21). None of the physicians who examined Plaintiff noted issues with Plaintiff's hands or his ability to manipulate. (R. 214, 217, 219-21, 223, 225, 248-53, 290-95, 303-06, 320-26, 370-74, 399-400, 434-47). Moreover, the ALJ rejected Plaintiff's credibility and Plaintiff did not challenge the ALJ's credibility determination. (R. 19; Pl.'s Br. 2-6, ECF No. 21). Therefore, the Court finds that the record provides substantial evidence in support of the ALJ's RFC determination.

In conclusion, the Court finds that the report from Dr. Roaten, Plaintiff's diagnostic images, and the medical evidence from La Fe Clinic, University Medical Center, and Dr. Armendariz provide substantial evidence to support the ALJ's RFC determination. Accordingly, the Court finds that the ALJ's determination is supported by substantial evidence and is not a result of legal error.

## IV. CONCLUSION

Based on the foregoing, the Court **HEREBY ORDERS** that the decision of the Commissioner be **AFFIRMED** consistent with this opinion.

**SIGNED** and **ENTERED** this 5th day of August, 2016.

_____
**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**